UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HOWARD BRYAN, *also known as*,
PAUL SMITH,

                                 Petitioner,                  21-CV-6288-FPG

v.

                                                                          DECISION AND ORDER

JEFFREY SEARLS, Facility Director,
Buffalo Federal Detention Facility,

                                 Respondents.
_____

## INTRODUCTION

      Petitioner Howard Bryan, a.k.a. Paul Smith, brought this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Buffalo Federal Detention Facility. ECF No. 1. Respondent Jeffrey Searls is the alleged custodian of Petitioner. Responded filed a response to the petition on June 2, 2021.[1] ECF No. 4. The Court's scheduling order, ECF No. 2, provided Petitioner with 25 days to reply to Respondent's response but no reply was received.

      At the request of the Court, Respondent filed updated briefing on December 21, 2021. ECF No. 10. Petitioner was given until January 26, 2022, to respond to that briefing but, to date, no response or request for additional time to file has been received.

      In his response and supplemental briefing, Respondent asserts that Petitioner has been thwarting his removal such that his removal period should be tolled and his petition should be

---

[1] Respondent's response, which attaches signed declarations and other documentary evidence, addresses the merits of the petition, but also purportedly seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* ECF No. 4. Accordingly, his motion is denied as moot. *See Singh v. Barr*, No. 19-CV-732, 2019 WL 4415152, at *2 n.1 (W.D.N.Y. Sept. 16, 2019).

denied. ECF No. 4-3 at 2, 7-9; ECF No. 10 at 1. For the reasons set forth below, the Petition is DENIED WITHOUT PREJUDICE.

## BACKGROUND

The following facts are drawn from the submissions of Petitioner and Respondent and are undisputed unless otherwise indicated. Petitioner was born in, and is a citizen of, Jamaica. In 1988, he first arrived in the United States at 21 years old using a fraudulent passport. In April 1996, Petitioner was convicted of criminal possession of a loaded firearm and sentenced to seven years' imprisonment. In June 1996, Petitioner was convicted of "bail jumping" and sentenced to one year of imprisonment.

In August 1996, Petitioner first encountered the Immigration and Naturalization Service while in custody at Livingston Correctional Facility.[2] In October 1996, Petitioner was convicted of murder in Kings County Supreme Court and sentenced to life in prison. In November 1996, Petitioner was served with a Form I-221 Order to Show Cause which charged him with being removable pursuant to the Immigration and Nationality Act §§ 241(a)(1)(A) and 241(a)(2)(C).

In June 1997, an immigration judge ordered Petitioner removed from the United States. Petitioner appealed that order in July 1997. The Board of Immigration Appeals dismissed the appeal on December 18, 1997.

Petitioner served his sentence in New York State custody until, on December 24, 2020, Immigration and Customs Enforcement ("ICE") took custody of Petitioner following his release. On January 5, 2021, a Warrant of Removal/Deportation was issued for Petitioner. On January 6, 2021, Petitioner informed ICE Deportation Officer Nicole Ballistrea that his real name is "Rupert

---

[2] INS is a legacy agency to Immigration and Customs Enforcement.

Bryan," despite his use of the name "Howard Bryan."[3] After learning this information, Ballistrea contacted the ICE officials who handle removals to Jamaica in an attempt to obtain a birth certificate for Petitioner—which is required in order for travel documents to issue from Jamacia. In his petition, Petitioner asserts that he has truthfully provided his "correct name, date of birth as well as his mother's details." *See* ECF No. 1 at 2.

On January 7, 2021, Petitioner was served with a "Warning for Failure to Depart," which "advis[ed] him of his obligation to depart from the United States, and further instruct[ed] him that pursuant to Immigration and Nationality Act § 241(a)(1)(C) his statutory removal period may be extended if he refused to make applications in good faith for travel documents or other documents necessary for his removal, or if he conspired or acted to prevent his removal." Petitioner failed to sign this warning. At that time, Petitioner was also issued an "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal," which advised him of his obligation to assist in obtaining the documents required for his removal. Petitioner was also sent a "Notice to Alien of File Custody Review," which indicated that his detention would be reviewed for consideration of whether he would be considered for release on an Order of Supervision.

On February 10, 2021, a representative of the Jamaican Consulate interviewed Petitioner. At that time, Petitioner was served with another Warning—which he again refused to sign—and another Instruction Sheet, which he also refused to sign. On February 12, 2021, DHS sent a renewed request to the Jamaican Government for Petitioner's birth certificate. In response, the Jamaican Embassy requested additional photographs of the Petitioner. Petitioner informed DHS that he would speak with his mother and sister about his birth certificate and about obtaining

---

[3] Ballistrea is a Deportation Officer at the Buffalo Federal Detention Facility and submitted two signed declarations to the Court. ECF No. 4-1; ECF No. 10 at 3-4.

additional photographs.  On February 16, 2021, additional photographs of Petitioner were sent to the Jamaican Embassy.

On March 18, 2021, Petitioner was issued a third Warning and another Instruction Sheet . This time, Petitioner wrote the following on the signature line for each document: "Without Prejudice UCC I-308; I-303."  That same day, ICE received a packet of documents from Petitioner which did not include the birth certificate he stated he would obtain from family.  On March 26, 2021, Petitioner was informed that ICE had reviewed his custodial status and determined that he would not be released under an Order of Supervision.  Specifically, ICE had determined that Petitioner was a danger to the community based on his criminal history, which included a murder conviction.

In addition to the name "Howard Bryan," Petitioner has at least two other aliases and ICE remains unsure which, if any, of the three names is Petitioner's true legal name.  Petitioner was interviewed by a Jamaican official but refused to answer questions that would aid Jamaica in uncovering his legal name and obtaining a travel document for his removal.  In addition, Respondent claims that Petitioner has instructed family members not to cooperate with officials inquiring about his nationality or identity.  See ECF No. 4-3 at 9; ECF No. 10 at 4.  Despite undertaking a genealogical investigation beginning in April 2021, Jamaican officials have been unable to identify the Petitioner or locate a birth certificate.  On June 25, 2021, DHS served Petitioner with a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g)(1)(ii).  Since that time, ICE has continued to work to verify Petitioner's identity.

**DISCUSSION**

**I.      Applicable Statute**

Respondent argues that Petitioner has acted to prevent his removal, such that his removal period should be extended pursuant to 8 U.S.C. § 1231(a)(1)(C) and the petition denied  *See* ECF No. 4-3 at 7-9; ECF No. 10.  Respondent asserts that Petitioner "had been providing false information through January 6, 2021"; "has not taken affirmative actions to obtain a visa or passport or birth certificate in his true name"; has "refused to answer questions that would aid the country of Jamaica in ascertaining [his] identity and obtaining a travel document for his removal"; and "has been in contact with family members and has advised them not to cooperate with any officials inquiring about his nationality or identity."  ECF No. 4-3 at 9; ECF No. 10 at 4.

The Immigration and Nationality Act (the "INA") authorizes the detention of aliens pending removal.  Section 1231 of the INA addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'"  *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018).  The removal period begins "on the latest of the following": (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  8 U.S.C. § 1231(a)(1)(B).

Notwithstanding the statute's time constraints for removal, under subsection (a)(1)(C), "the removal period may be suspended if an alien fails or refuses to make application in good faith for travel documents necessary to effect his removal and departure."  *Leslie v. Herrion*, 677 F.Supp.2d 651, 653 (W.D.N.Y. 2010).  Section 1231(a)(1)(C) provides the following:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C).

**II.     Relief Sought**

Petitioner asserts that: (1) his continued detention is not authorized by the INA and/or violates the Fifth Amendment; (2) he is entitled to release under an order of supervision; (3) continued detention without a hearing violates procedural due process; and (4) he is entitled to an immediate hearing before an immigration.  *See* ECF No. 1 at 12.  In response, Respondent asserts that Petitioner's removal period should be tolled and that Petitioner has failed to meet his burden to show that there is no significant likelihood of his removal in the reasonably foreseeable future.  ECF No. 4-3 at 7-11.  Respondent further asserts that Petitioner's continued detention is neither contrary to regulations nor unconstitutional and his requests for release should be stricken.  *Id.* at 11-12.

**A.   Extension of Removal Period Under Section 1231(a)(1)(C)**

Petitioner's continued detention is authorized by the INA.  In determining whether aliens have satisfied their obligations under § 1231(a)(1)(C), courts consider the following:

> whether they have undertaken overt actions to thwart removal, whether they can or have produced affidavits from friends and family to support their claims of nationality, whether they have requested travel documents from the country of intended removal, whether they have attempted to contact the country of intended removal's consulate, and/or whether they can or have provided the [DHS] with requested documents.

*Jiang v. Holder*, No. 15–CV–48, 2015 WL 3649739 (W.D.N.Y. June 11, 2015).

Here, Petitioner's 90-day statutory removal period began on December 24, 2020, when he was received into Department of Homeland Security ("DHS") custody from the New York State

6

Department of Corrections and Community Supervision.  *See* ECF No. 4-1 at 2; ECF No. 4-3 at 9; 8 U.S.C. § 1231(a)(1)(B)(iii).  As explained above, Petitioner has failed to cooperate with Respondent's requests to assist in obtaining the necessary travel documents for his removal.  DHS records indicate that he told officials that he would work with his family to obtain a birth certificate, while at the same time instructing family members not to comply with requests regarding his nationality or identity.  ECF No. 4-3 at 2; ECF No 10 at 4.  Additionally, Petitioner has been served three times with a Warning for Failure to Depart and an Instruction Sheet to Detainee Regarding Requirement to Assist in Removal advising him of his obligation to assist in his removal and informed of the consequences for failing to do so.  ECF No. 4-1 at 3-6.  He has also been served with a Notice of Failure to Comply and remains in "Failure to Comply" status.  ECF No. 10 at 3-4.

Based on these facts, Petitioner's removal period is extended until such time as he can demonstrate good faith compliance with the obligations under § 1231(a)(1)(C) and related regulations.  Indeed, other courts in this Circuit have reached the same conclusion on similar sets of facts.  *See Jiang*, 2015 WL 3649739, at *4 (finding petitioner had failed to show good faith compliance with the obligations of § 1231(a)(1)(C) where records indicated that he had "failed to provide the information and documentation requested by the Chinese Consulate in order to complete the process for issuance of travel documents"; had "been served . . . with several Warnings for Failure to Depart, advising him of his obligation to assist in his removal and comply with the process, and warned of the consequences for failing to do so"; and was in Failure to Comply status); *see also Ricketts v. Mule*, No. 07–CV–0138, 2009 WL 102953, at *6 (W.D.N.Y. Jan. 13, 2009); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 501 (S.D.N.Y. 2009) (collecting cases).

**B. Due Process Claims**

Petitioner argues that his continued detention violates his due process rights under the Fifth Amendment. More specifically, he argues that his detention has become unreasonably long and that he is entitled to a hearing at which DHS must justify his continued detention. ECF No. 1 at 1, 12.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), "the Supreme Court considered how 8 U.S.C. § 1231, and its apparent authorization of indefinite executive detention, interacts with the Fifth Amendment's prohibition against depriving a person of their liberty without due process." *Brathwaite v. Barr*, 475 F. Supp. 3d 179, 189 (W.D.N.Y. 2020). "The Court ruled that a six-month period of detention pending removal is presumptively reasonable." *Id.* at 190 (citing *Zadvydas* 533 U.S. at 701). "After six months, a detained noncitizen may seek release by demonstrating that his or her removal is not likely to occur in the reasonably foreseeable future." *Id.* (citing *Zadvydas* 533 U.S. at 699-700).

Rather than attributable to the normal administrative process, the delay here is of Petitioner's own making. "[W]hen an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." *Ricketts*, 2009 WL 102953, at *6. Furthermore, Respondent has submitted evidence that Petitioner's removal to Jamaica is likely once his identity is established. *See* ECF No. 4-3 at 10 ("The statistics with regard to Jamaica, show that between 2016-2018 DHS removed over three thousand noncitizens, indicating that no institutional barriers prevent the removal of Petitioner, once he provides accurate information to the [Jamaican] consulate) (citing DHS Yearbook of Immigration Statistics 2018, Table 41: Aliens Removed by Criminal Status and Region and Country of

8

Nationality: Fiscal Year 2018).  Additionally, Jamaica has not determined that it will not issue Petitioner the required travel documents, rather it has only indicated that its investigation into Petitioner's identity remains ongoing.  This, too, weighs in Respondent's favor.  *See Ricketts*, 2009 WL 102953, at *6.

Based on these facts, the Court finds that Petitioner has failed to sustain his initial burden under *Zadvydas* to demonstrate that there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  *See Jiang*, 2015 WL 3649739, at *6 ("DHS sent the request for a travel document to the Chinese Consulate promptly upon taking petitioner into custody, and the request remains pending subject to receipt of information from petitioner confirming his identity as a Chinese citizen. There is nothing in the record before the court to indicate that Chinese authorities are inclined to deny the request upon receipt of the required information."); *see also Leslie*, 677 F.Supp.2d at 653 ("[R]espondent is entitled to judgment since it is clear that [Petitioner's] continued detention is of his own making. He holds the keys to his release from custody by taking reasonable steps to obtain the necessary travel documents for his return to Jamaica.").[4]

## CONCLUSION

For the reasons discussed above, Petitioner's petition for a writ of habeas corpus, ECF No. 1, is DISMISSED WITHOUT PREJUDICE.  Petitioner may file a new petition in the future based on new and different facts and consistent with the analysis above.  Respondent's motion to dismiss, ECF No. 4, is DENIED AS MOOT.

The Clerk of Court is directed to enter judgment and close this case.

---

[4] Petitioner's substantive due process claim fails under *Zadvydas* because his rights "are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable." *Brathwaite*, 475 F. Supp. 3d at 197-98 (citing *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003).

IT IS SO ORDERED.

Dated: February 14, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York